EMMETT H. WIGGINS, Plaintiff v. PATSY ANN L. SHORT, MARY L. LOWELL, CHARLOTTE ,AMANDA L. MUNGER, MARK BRICKHOUSE, and EVELYN B. LOWELL, Trustee for the ALBANIA TRUST, Defendants

No. COA95-518

(Filed 7 May 1996)

1. **Highways, Streets, and Roads § 11 (NCI4th)— path not public road—sufficiency of evidence**

   The trial court did not err in concluding that a path crossing defendants' property and leading to plaintiff's house was not a public road, since the path had not been established as a public road in a judicial proceeding; the public had not generally used the road; the fact that the town had a water drain easement across the path was competent evidence from which the trial judge could conclude that the town maintained the road for its own access, not that of the public generally; defendants never offered or intended to offer the path to the public; and simply including the path on the town map was insufficient evidence of the town's intent to accept the path for public use. N.C.G.S. § 160A-296(a)(2).

   **Am Jur 2d, Highways, Streets, and Bridges § 32.**

## 2. Easements §§ 59, 60, 61 (NCI4th)— no express easement— no implied easement from prior use—no implied easement by necessity

The trial court did not err in finding that the facts of this case did not support : (1) an express easement, since plaintiff failed to produce sufficient evidence to fix the location of the easements granted in the conveyance to plaintiff's predecessor and to establish the intentions of the parties at the time of that conveyance; (2) an implied easement from prior use, since plaintiff failed to show that at the time of his conveyance, the path in question was an obvious and apparent path across the land of his predecessors, that it was necessary for the benefit of his property, that there existed a map showing the property or the paths running through it at the time of plaintiff's conveyance, or that before separation of the property, the use giving rise to the alleged easement was so long continued and obvious as to show that it was meant to be permanent; and (3) an implied easement by necessity, since plaintiff had adequate and proper access to his property without the use of the path in question.

### Am Jur 2d, Easements and Licenses §§ 134, 135.

Appeal by plaintiff from judgment entered 2 February 1995 by Judge Zoro J. Guice, Jr., in Chowan County Superior Court. Heard in the Court of Appeals 21 February 1996.

*Moseley, Elliott & Sholar, L.L.P., by Bradley A. Elliott and Terry M. Sholar, for plaintiff appellant.*

*Max S. Busby, P.A., by Max S. Busby, for defendant appellee.*

SMITH, Judge.

Plaintiff appeals from judgment entered by the trial court denying a mandatory injunction for removal of a gate and fence from a section of roadway over which plaintiff claimed a right-of-way. After careful review of the record, we affirm.

The record reveals that in 1940, M.G. Brown Company, Inc., conveyed a certain portion of its property in Chowan County, North Carolina to Pattie C. Brown (the 1940 conveyance). The conveying instrument also conveyed to grantee, Pattie Brown, three rights-of-way across M.G. Brown Company property.

In 1946, Pattie C. Brown conveyed a part of the property conveyed to her through the 1940 conveyance, to E.H. Wiggins, appellant (the 1946 conveyance). The 1946 conveyance to E.H. Wiggins did not expressly provide any access easements or other rights-of-way, but did contain a typical habendum clause referencing all "privileges and appurtenances."

When appellant Wiggins initially bought the land, "it was in poor condition" and "high water [from the adjoining creek] would just cover it." After purchasing the land, Mr. Wiggins filled in much of the property and began using it to store heavy equipment, such as bulldozers. He eventually moved a lighthouse from the Roanoke River to his property and began living there off and on. He now lives in a mobile home on the property.

At the time he purchased the land from Pattie C. Brown, Wiggins had two means of access. He could get to his property by water or by Eden Street Road Extended, which crossed a wooden bridge. The bridge apparently crossed Pembroke Creek, although there is some evidence in the record that the bridge crossed Filbert Creek. We are simply unable to discern the location of the bridge from the record. At trial, Mr. Wiggins testified that, except for those two means of access, he "couldn't get [to his property] until later they changed the road up there and put Dickerson [sic] Street in . . . ." There is now a path Mr. Wiggins calls "Shore Drive," which runs from Dickinson Street across appellee's property (the Pattie C. Brown tract) to Mr. Wiggins' home. From the record we have been unable to discern exactly where this path crosses appellees' property.

At some time, although it is unclear when, the bridge crossing the creek became unusable and was eventually torn down. Thus, the Eden Street Extended entrance to appellant's property was no longer available. Apparently, it was then that appellant began accessing his property by the "Shore Drive" entrance.

In the summer of 1989, appellees began having security problems with the house located on their property. Patsy Lowell Short, Pattie C. Brown's granddaughter and part owner of the Pattie C. Brown tract, testified that someone broke into the house and removed selected items in a "kind of sampling run." As a result, appellees decided to erect a gate and fence around portions of the house. Appellees installed a gate across "Shore Drive," the path leading to Mr. Wiggins' home. Going towards Mr. Wiggins' property, the gate could be opened from a vehicle with the proper device (possibly electronic) or it could

be opened from his home. Coming from his property, the gate was controlled by an underground sensing device which opened and closed the gate automatically. Appellees never attempted to keep Wiggins from using "Shore Drive." In fact, they made repeated efforts to show him how the gate worked and to give him the necessary device which would have allowed him to open the gate from his vehicle.

On 27 February 1991, Mr. Wiggins filed a complaint against appellees, requesting compensatory and punitive damages, and an order requiring defendants to remove the gate across "Shore Drive" immediately and permanently. The parties waived jury trial. The trial court concluded that the evidence was insufficient to establish that the path appellant calls "Shore Drive" is a public road. The court also concluded that Mr. Wiggins had not presented sufficient evidence to show that he had an easement over and across the path. Thus, the trial court entered judgment in favor of defendants, denying plaintiff's request that the gate erected across the path be removed.

[1] Appellant brings forth several assignments of error. First, he argues the trial court erred in concluding that the path he calls "Shore Drive" is not a public road. At trial, Wiggins offered two pieces of evidence as proof that "Shore Drive" was a public road and could not, therefore, be obstructed by appellees pursuant to N.C. Gen. Stat. § 160A-296(a)(2) (1994). First, he introduced a map entitled "Town of Edenton, N.C., Corporate Limits," which shows a road adjoining Dickinson Street labeled "Shore Drive." The map is dated 1979 and is signed by Carlyle C. Webb, a registered land surveyor, who certifies that the mileage statements on the map are correct. Second, Wiggins testified that the town of Edenton has occasionally graded and spread gravel on the road. Ms. Patsy Short testified that the town has a water drainage easement down a portion of the road and this is why the town occasionally grades the road.

The North Carolina Supreme Court has held:

" '[T]here can be in this State no public road or highway unless it be one either established by public authorities in a proceeding regularly instituted before the proper tribunal or one generally used by the public and over which the public authorities have assumed control for the period of twenty years or more; or dedicated to the public by the owner of the soil with the sanction of the authorities and *for the maintenance and operation of which they are responsible.*' "

*Owens v. Elliott,* 258 N.C. 314, 317, 126 S.E.2d 583, 586 (1962) (quoting *Chesson v. Jordan,* 224 N.C. 289, 291, 29 S.E.2d 906, 908 (1944)). In this case, "Shore Drive" has not been established as a public road in a judicial proceeding, nor has the public generally used the road. Town or city maintenance of a roadway may be some evidence of acceptance of the road for public use. *See Blowing Rock v. Gregorie,* 243 N.C. 364, 368, 90 S.E.2d 898, 901 (1956). However, in this case, the Town of Edenton has a water drain easement across the path. This is competent evidence from which the trial judge could conclude that the town maintained the road for its own access, not that of the public generally.

Alternatively, appellant argues that the map of the town evidences a public dedication of the road. However, appellant's argument fails for two reasons. First, from the record, we find no evidence that appellees ever offered or intended to offer the road to the public. Second, simply including the road on the town map is insufficient evidence of the town's intent to accept the road for public use. To accept a road for public use, the proper public authorities must accept the offer in some "recognized legal manner." *Owens,* 258 N.C. at 317, 126 S.E.2d at 586 (citing *Gault v. Lake Waccamaw,* 200 N.C. 593, 158 S.E. 104 (1931)). There is a dearth of evidence indicating proper acceptance of the path. Thus, the trial court did not err in its conclusion that "Shore Drive" is not a public road.

[2] Next, appellant argues the trial court erred in finding that the facts of this case do not support an express easement, an implied easement from prior use, or an implied easement by necessity. First, Mr. Wiggins argues that Pattie C. Brown was granted an easement to "Shore Drive" through the 1940 conveyance from M.G. Brown Company. He maintains that through that deed, he obtained an express appurtenant easement over "Shore Drive."

The 1946 conveyance from Pattie C. Brown to E.H. Wiggins makes no specific reference to an easement, but does refer to all "privileges and appurtenances" of the transferred land. "Appurtenance" has been defined as " '1: an incidental property right or privilege (as to a right of way, a barn, or an orchard) belonging to a principal right and passing in possession with it 2: a subordinate part, adjunct, or accessory.' " *Blackwelder v. Insurance Co.,* 10 N.C. App. 576, 580, 180 S.E.2d 37, 39 (1971) (quoting Webster's Third New International Dictionary). An easement granted to Pattie C. Brown in the 1940 conveyance may have been transferred with the portion of

land conveyed to Wiggins in the 1946 deed, as an "appurtenance," if certain conditions of an express easement had been met.

An express easement must be "sufficiently certain to permit the identification and location of the easement with reasonable certainty." *Adams v. Severt*, 40 N.C. App. 247, 249, 252 S.E.2d 276, 278 (1979). "The description must either be certain in itself or capable of being reduced to a certainty by a recurrence to something extrinsic to which it refers." *Thompson v. Umberger*, 221 N.C. 178, 180, 19 S.E.2d 484, 485 (1942) (citing *Hodges v. Stewart*, 218 N.C. 290, 291, 10 S.E.2d 723, 724 (1940)). However, our Supreme Court has stressed that an alleged grant of an easement will be void only "when there is such an uncertainty appearing on the face of the instrument itself that the court—reading the language in the light of all the facts and circumstances *referred to in the instrument*—is yet unable to derive therefrom the intention of the parties as to what land was to be conveyed." *Allen v. Duvall*, 311 N.C. 245, 249, 316 S.E.2d 267, 270 (1984). Where there is no express agreement with respect to the location of an easement, " 'the practical location and user of a reasonable way by the grantee, acquiesced in by the grantor . . . sufficiently locates the way, which will be deemed to be that which was intended by the grant.' " *Id.* (quoting *Borders v. Yarbrough*, 237 N.C. 540, 542, 75 S.E.2d 541, 543 (1953)).

The plaintiffs in the *Allen* case produced surveys, photographs, maps and testimony from witnesses fixing the location of alleged easements which were not sufficiently described in the conveyance. In this case, however, appellant has failed to produce sufficient evidence to fix the location of the easements granted in the 1940 conveyance to Pattie C. Brown. The granting language in Pattie C. Brown's 1940 deed is insufficient to describe the exact location of the alleged easements because it is vague. Evidence presented by appellant at trial fails to establish the intentions of the parties with respect to the location of the easements granted to Pattie C. Brown in 1940. We obviously cannot use the same language to establish Wiggins' alleged easement rights across "Shore Drive." The language of the 1940 deed provides Pattie C. Brown

[1] together with the right to use, jointly with M.G. Brown Company, the right of way granted to M.G. Brown Company by R.L. Boyce & Wife by deed dated February 17, 1927 recorded in Book Q#2 page 411 in the public registry of said County, said right of way extending from the M.G. Brown Company property to the

State Highway a short distance West of Filbert's Creek, [2] together with a right of way across the M.G. Brown Company's property necessary to get to and from and use the right of way aforesaid. [3] Also a right of way across the M.G. Brown Company property over the road leading from the wooden bridge across Filbert's Creek to Eden Street with all necessary or proper means of transportation of persons and property.

We note that the words "right of way" usually connote an easement, and in this case, giving effect to these words, we find that three appurtenant easements were granted to Pattie C. Brown through the above conveyance. *See Crawford v. Wilson*, 43 N.C. App. 69, 257 S.E.2d 696 (1979).

According to appellant's testimony, at the time he purchased the land from Brown, he had two means of access to his property. He could access it from Pembroke Creek or by crossing the wooden bridge connected to Eden Street Extended. Wiggins' testimony suggests that an easement exists over the road leading from the Eden Street Extended bridge to his property. However, Pattie C. Brown's 1940 deed refers to a bridge over Filbert Creek. The evidence does not clearly establish the existence of an easement leading from Eden Street Extended to appellant's property. Furthermore, no evidence fixing the location of the other two easements ([1] and [2]) referenced in Brown's 1940 deed was presented at trial. We are unable to determine whether the road appellant calls "Shore Drive" constitutes part, or all, of one of the remaining two easements described in Brown's deed, because we cannot determine from the record where those paths were. The description in the 1940 conveyance does not furnish any means by which the location of the proposed easement may be ascertained. Appellant failed to produce evidence at trial showing that "Shore Drive" is a path the parties intended to include in the grant of easements in the 1940 conveyance. *Harris v. Greco*, 69 N.C. App. 739, 744, 318 S.E.2d 335, 339 (1984). Therefore, the trial court did not err in concluding appellant does not have an express easement over "Shore Drive."

However, even if not expressly granted in a conveyance, "the rule is said to be general that, where one conveys a part of his estate, he impliedly grants all those apparent or visible [appurtenant] easements upon the part retained which were at the time used by the grantor for the benefit of the part conveyed, and which are reasonably necessary for the use of that part." *Carmon v. Dick*, 170 N.C. 305,

306-07, 87 S.E. 224, 225 (1915); *see also Barwick v. Rouse*, 245 N.C. 391, 95 S.E.2d 869 (1957); *Dorman v. Ranch*, 3 N.C. App. 559, 165 S.E.2d 561 (1969). Because it is not expressly granted, this type of easement has come to be known as an easement implied from prior use. A reason for the rule is that an appurtenant easement, which "is an incorporeal right attached to the land and incapable of existence separate and apart from the particular land to which it is annexed," passes with transfer of the dominant tenement, or part thereof, as an appurtenance. *Yount v. Lowe*, 288 N.C. 90, 97, 215 S.E.2d 563, 567, *aff'd*, 288 N.C. 90, 215 S.E.2d 563 (1975). Applying this reasoning to the instant case, it is tenable that an easement obtained by Pattie C. Brown from M.G. Brown Company in the 1940 deed, was impliedly transferred through the 1946 conveyance to E.H. Wiggins.

It is also possible that an easement from prior use may have arisen upon severance of the Pattie C. Brown property. This is so even if such path had been entirely contained within Brown's property before severance, rather than running through any portion of the M.G. Brown property. It is fundamental that a person may not possess an easement in his own land. However

> "it is a well settled rule that where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude, at the time of the severance, is in use and is reasonably necessary to the fair enjoyment of the other part of the estate, then upon a severance of the ownership, a grant of the right to continue such use arises by implication of law . . . The underlying basis of the rule is that unless the contrary is provided, all privileges and appurtenances as are obviously incident and necessary to the fair enjoyment of the property granted substantially in the condition in which it is enjoyed by the grantor are included in the grant."

*Barwick*, 245 N.C. at 393, 95 S.E.2d at 871 (quoting 17 Am. Jur. 945 *Easements Implied* § 33).

An easement may be implied from prior use when three essential elements of creation are met: (1) A separation of title; (2) before the separation took place, the use which gives rise to the easement must have been so long continued and obvious as to show that it was meant to be permanent; and (3) the easement must be necessary to the beneficial enjoyment of the land granted or retained. *Carmon*, 170 N.C. 305, 87 S.E. 224; *Barwick*, 245 N.C. 391, 95 S.E.2d 869; *Jones v. Carroll*, 91 N.C. App. 438, 371 S.E.2d 725 (1988). The burden of estab-

lishing an easement is upon the party asserting a right to go upon lands to which he does not have title. *McCracken v. Clark*, 235 N.C. 186, 69 S.E.2d 184 (1952); *Ferrell v. Trust Co.*, 221 N.C. 432, 20 S.E.2d 329 (1942); *Carmon*, 170 N.C. 305, 87 S.E. 224. Wiggins has failed to show that the path he calls "Shore Drive" meets the essential elements of an easement implied from prior use, either across the M.G. Brown Company tract or the Pattie C. Brown tract. Therefore, for the reasons stated below, we affirm the trial court's conclusion that no such implied easement exists.

We first address the possibility of an easement extending across the M.G. Brown Company tract. Appellant has failed to show that at the time of his conveyance, "Shore Drive" was an obvious and apparent path across M.G. Brown Company property or that the path was necessary for the benefit of Wiggins' property. The record is devoid of any map or plat showing the M.G. Brown property or the paths that ran through it at the time of appellant's conveyance. Without such evidence, the trial court was correct in concluding that there was no easement implied from prior use across any land retained by the original grantor, M.G. Brown Company.

Second, with respect to a claim of easement across the Pattie C. Brown tract, appellant has again failed to prove two of the three requirements necessary to imply an easement by prior use. Wiggins has shown separation of title. However, he has not shown that before the separation of the property, the use giving rise to the alleged easement was so long continued and obvious as to show that it was meant to be permanent. *Carmon*, 170 N.C. at 308, 87 S.E. at 226. Mr. Wiggins testified at trial that until the bridge connected to Eden Street Extended across Pembroke Creek became unusable, he did not use the "Shore Drive" entrance to his property. He presented no other evidence that "Shore Drive" was otherwise used prior to severance of the Brown tract. Wiggins has also failed to show that the easement across the Brown property is necessary to the beneficial enjoyment of the land granted. Because appellant has failed to meet his burden on this issue, we affirm the trial court's conclusion that no easement implied from prior use exists under the facts of this case.

As an alternative to an express or implied easement, appellant argues he has an easement by necessity across "Shore Drive." The trial court found that Mr. Wiggins had adequate and proper access to his property without the use of "Shore Drive," and thus did not have an easement by necessity over the road. We agree and affirm. This

**WIGGINS v. SHORT**

[122 N.C. App. 322 (1996)]

Court has held that an easement by necessity will be implied upon proof of two elements: (1) the claimed dominant parcel and the claimed servient parcel were held in a common ownership which was ended by a transfer of part of the land; and (2) as a result of the land transfer, it became "necessary" for the claimant to have the easement. *Harris*, 69 N.C. App. at 745, 318 S.E.2d at 339. To establish a right of way as "necessary," it is not required that the party thus claiming show absolute necessity. It is sufficient to show physical conditions and use which would "reasonably lead one to believe that the grantor intended the grantee should have the right of access." *Oliver v. Ernul*, 277 N.C. 591, 599, 178 S.E.2d 393, 397 (1971) (citing *Smith v. Moore*, 254 N.C. 186, 118 S.E.2d 436 (1961)). The right must be necessary to the beneficial use of the land granted, "and to its convenient and comfortable enjoyment, as it existed at the time of the grant." *Meroney v. Cherokee Lodge*, 182 N.C. 739, 744, 110 S.E. 89, 91 (1921).

In this case, Wiggins initially used the land he bought from Brown to store boats and barges; it was covered at high water. After filling in the land, Wiggins used it to store heavy equipment and accessed it by Eden Street Extended. There was no evidence presented at trial to show the road Wiggins calls "Shore Drive" provided any access to his land in 1946, the time of the grant. Wiggins has also failed to show that his grantor intended that he use the path as a means of access to his property at the time of the conveyance. Furthermore, based upon competent evidence presented at trial, Pembroke Creek, which abuts Wiggins' property, is still navigable and is available as a means of access to his property in the same way it was at the time of the 1946 grant. Thus, the trial court did not err in its conclusion that Pembroke Creek provides adequate and proper access to Wiggins' property and he does not have an easement of necessity across appellees' property, *via* "Shore Drive."

Based upon our holding in this case, it is unnecessary to address appellant's remaining assignment of error. For the reasons stated herein, the judgment of the trial court is

Affirmed.

Judges GREENE and LEWIS concur.